141 So. 678

## BIRMINGHAM NEWS CO. v. McCONNELL et al.

### 6 Div. 105.

Supreme Court of Alabama.
March 17, 1932.

Rehearing Denied May 26, 1932.

Lange, Simpson & Brantley, of Birmingham, for appellees.

R. DuPont Thompson and Walter S. Smith, both of Birmingham, for appellant.

**BROWN, J.**

This is an action of assumpsit by the appellant against appellees, F. G. McConnell, Jr., and C. D. McConnell, late partners in business under the firm name of McConnell Auto Exchange, to recover the price of advertising purchased by the partnership, and furnished by the plaintiff under a written contract made between the parties on the 15th day of October, 1927, before the dissolution of the partnership.

The complaint, upon which the case went to the jury, consists of the common counts, on account, account stated, and for work and labor done. The plea was the general issue, pleaded in short by consent, with leave, etc.

The plaintiff had verdict and judgment for the amount claimed, which, on motion of F. G. McConnell for a new trial, was set aside and vacated, and, from the order granting the new trial, the plaintiff has appealed.

The contract is in the following words: "In consideration of the rate herein named * * * we * * * hereby authorize insertion of space in the Birmingham News as follows: Not less than 3 lines of classified advertising every day for 12 months from the date hereof, for which we agree to pay the Birmingham News Company at the rate of 17 cents per measured line per day for all classified advertising set in Agate type, which measures 14 lines to the inch. This rate covers insertion in both morning and evening editions and counts as one insertion on this contract. All Classified Advertising starts in the morning editions and runs without change through all evening editions the same day.

"Payments to be made weekly for all ad-

vertising used during the preceding week. If the advertising is discontinued before the expiration of this contract we agree to pay for the number of lines actually used in accordance with the rate card on the reverse side of this contract. *Discontinuance of contract must be in writing. Always repeat last regular advertisement when new copy is not furnished.* Change of copy is permitted daily. [Italics supplied.]

"It is further agreed that there are no terms or agreements not set forth herein, and that the rates and conditions on the back hereof are a part of this contract."

This contract was signed "McConnell Auto Exchange By C. D. McConnell," and "Accepted: J. W. Bratten for the Birmingham News Co." On the reverse side of the contract was a schedule of rates for classified advertising "line rates" with higher rates for single and short-time advertising, including a rate for "3 lines (or more) every day, one year * * * per line 17¢," with stipulation that "complaints of errors must be made in writing on or before the 10th of the month following insertion of the advertising on which the complaints are made. Otherwise the Birmingham News Company cannot be held responsible, and all bills will be conceded by the advertiser to be just, due and payable."

The plaintiff offered evidence going to show performance of the contract on its part, and there was a net unpaid balance of $263.19, on the account as of October 31, 1928, and in connection with the testimony of its credit manager, Oliver, offered in evidence without objection, the original ledger sheets showing the account and a balance of $263.19.

The defendant F. G. McConnell testified that the contract with the plaintiff was made for the partnership by his brother, and that, to use his language, "During the time that I and Frank,—the McConnell Auto Exchange,— were doing business over there we did make this contract here to do advertising with the News. We carried on business under that contract through the extension of the time until it was incorporated"; that he did not take any advertising after that; that on June 2, 1928, J. W. Bratten came over to the place of business of the McConnell Auto Exchange, asked for a check for $44.52, that he gave him the check from the partnership at the time and Bratten took it; that "the partnership of Frank McConnell and C. D. McConnell doing business as the McConnell Auto Exchange," did not buy any advertising from the News, or do any advertising in the News "after I gave him the check for $44.52"; that they did not do any more business after that date as a partnership.

On cross-examination this witness testified: "As to whether these ads that are charged for July, August and September, 1928, to the McConnell Auto Exchange, that are charged on this ledger sheet here, were not run in June, July, August and September, 1928, well, I will tell you, I can't remember back there. I don't remember. I couldn't say whether they were run or not. My brother at that time made almost all the ads. * * * As to whether from November 8th, 1927, when the first ad appeared, to October 31st, 1928, I gave any of these ads, I expect we gave ads out until June 2nd. I expect I did personally give some of these ads to the Birmingham News. And my brother gave some of them. Really I couldn't answer whether there was any ad charged on this account that was not run; I don't know; I don't remember. I don't know if there is any one ad that is charged on this account here that was not run for the McConnell Auto Exchange."

By this witness the defendant offered to show that the McConnell Auto Exchange, Inc., was incorporated on May 24, 1928, and also offered the corporation records kept in the office of the judge of probate to show such incorporation and the date thereof, and, on objection by the plaintiff, this evidence was rejected, and the defendant excepted.

The defendant also offered to show by the witness F. G. McConnell that he told Bratten, plaintiff's collecting agent who took the contract at the time he gave said Bratten a check on June 2, 1928, that he (F. G. McConnell) was withdrawing from the partnership, and that the partnership would not buy any more advertising from the News. This testimony was also rejected on plaintiff's objection, and defendant excepted.

The defendant also offered to show that the McConnell Auto Exchange, a partnership composed of F. G. and Charlie McConnell, went out of business as a partnership about the 24th of May, 1928. This evidence was likewise rejected.

The rejection of the foregoing matters of evidence, the refusal of the affirmative charge requested by the defendant, and the giving of charges 3, 4, and 6, requested by the plaintiff, were made separate grounds for the motion for a new trial.

The appellees' first contention is that the verdict of the jury is not supported by the evidence.

■■■ It is well settled that a partner withdrawing or retiring from a firm after the purchase of goods by the partnership, though he withdraws before the delivery of the goods, is not released from liability as a principal debtor. Brannum v. Wertheimer-Swartz Shoe Co., 117 Ala. 601, 23 So. 639; First Nat. Bank of Anniston v. Cheney, 114 Ala. 536, 21 So. 1002; 47 C. J. 1027, § 585. No good reason can be stated why this principle does not apply to any other merchantable commodity, such as advertising, necessary to the successful conduct of business.

The advertising, for the price of which the

plaintiff sues in this case, was purchased at the time the contract was entered into between the parties and was to be delivered from day to day, with the right of the purchasers to change the form or copy each day, but, if they failed to do so, the plaintiff had the right to continue the ad in the form of the last copy, subject to the right of the defendants to discontinue or terminate the contract by giving written notice to that effect. In such event, the defendants were to pay for the advertisements at the increased rate provided in the contract.

The manifest purpose of the stipulation providing for written notice for "discontinuance of the contract" was to avoid controversy and make more certain the rights of the parties, and evidence of verbal notice, though it be conceded that Bratten was an authorized agent to accept written notice, was rejected without error.

Nor could the defendants avoid liability for advertising purchased under the contract, by changing the form of the business from a partnership to a corporation.

The evidence abundantly sustains the verdict of the jury and justified the refusal of the affirmative charge requested by defendants. In fact, it is our judgment that the plaintiff was due the affirmative charge, and charge 6, given at plaintiff's request, was given without error. Charges 3 and 4, given at plaintiff's request, asserted correct propositions of law, and, while they were abstract, giving them did not constitute error that would justify the granting of a new trial.

We therefore hold that the court erred in granting the motion for a new trial, and the order granting the new trial will be reversed and the motion overruled, with the result that the judgment in the circuit court in favor of the plaintiff is reinstated.

Reversed and rendered.

ANDERSON, C. J., and BOULDIN and KNIGHT, JJ., concur.